**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RESENSYS, LLC<br>6517 Mid Cities Avenue<br>Beltsville, Maryland 20705<br><br>*Plaintiff*,<br><br>v.<br><br>THOMAS S. WADE<br>2 Sheffield Manor Ct Apt 101<br>Silver Spring, MD 20904-7751<br>(Montgomery County)<br>c/o John Singleton, Esq.<br>Law Office of Andrew M. Dansicker, LLC<br>Executive Plaza II, Suite 705<br>11350 McCormick Road<br>Hunt Valley, Maryland 21031<br><br>*Defendant*. | Civil Case No.: 8:26-cv-4293<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Resensys, LLC ("Resensys" or "Plaintiff") hereby files suit against Thomas S. Wade ("Wade" or "Defendant"), and alleges as follows:

## INTRODUCTION

1. Using its proprietary wireless sensor technology, Resensys monitors bridges, tunnels, dams, cranes, and other critical infrastructure for stress, metal fatigue, cracking, vibration, and other symptoms of compromised structural integrity. Resensys provides these monitoring services to government agencies in the United States and globally as well as to engineering consultants, construction firms, property owners, and other customers.

2. Resensys's proprietary monitoring technology includes both the hardware necessary to detect subtle structural changes and the software and cloud computing needed to process, interpret, and display the collected data. Resensys's trademarked family of monitoring units, known as SenSpot, are small wireless sensors that can be easily and discreetly affixed to a bridge or other structure. Resensys's trademarked software suite, SenScope, allows users to receive and view sensor data in real time through an intuitive data interface. Resensys's sensors are among the most energy-efficient wireless monitoring sensors available, and they are used to monitor infrastructure across the United States and internationally.

3. Defendant Wade was formerly employed by Resensys as a Database Administrator. He was responsible for maintaining data vital to Resensys's products in a secure and easily accessible manner. While performing this work, Wade was necessarily exposed to, and could readily access and obtain, Resensys's most important and sensitive software trade secrets, including code essential to Resensys's SenScope software program, database system, and the web-based tools used to access and visualize data in Resensys's systems.

4. Because Resensys knew that Wade's work would expose him to some of Resensys's most sensitive trade secrets, Resensys required him to agree, as a condition of his employment, that he would not disclose or otherwise compromise the confidentiality of Resensys's proprietary information. Wade further agreed, again as a condition of his employment, that any code he wrote or technology he developed during his employment with Resensys would be the property of Resensys.

5. Wade abandoned his duties at Resensys in late March 2026. He abruptly stopped performing his database management responsibilities and ceased communicating with colleagues without providing any notice of resignation or leaving documentation concerning the maintenance or troubleshooting of the code and systems he had been developing for Resensys in the preceding

year. Resensys soon discovered that, upon his abrupt departure, Wade had taken with him code and other information without which Resensys's databases and web-based monitoring systems could not function properly. As a result, several crucial systems failed or stopped operation in the weeks following Wade's departure. Although Resensys repeatedly requested by text message and email that Wade return essential documentation and code, Wade has refused to do so and, in fact, has attempted to use Resensys's code for his own commercial gain as he prepares to launch a business of his own.

6. Wade has not only wrongfully retained company property, but, starting in mid-April, has regularly launched denial-of-service ("DoS") and other disabling attacks on Resensys's servers and systems, apparently in retribution for Resensys's attempts to reclaim its intellectual property. For example, in the evening of April 15, 2026, Wade disabled the Domain Name System ("DNS") listing for "Resensys.cloud," a remote server through which all Resensys monitoring systems transmitted data to users. As a result of this attack, all Resensys systems were disabled for a period beginning on the evening of April 15, 2026, and ending on the morning of the following day. Resensys has incurred and continues to incur significant expense in defending and remediating these attacks.

7. Resensys now files this action to protect the confidentiality of its trade secrets, assert its rights under the employment contract and separation agreement to which Wade is subject, and defend itself from Wade's retributive campaign of DoS attacks.

## PARTIES AND JURISDICTION

8. Resensys is a limited liability company organized and existing under the laws of Maryland. It has its principal place of business in Beltsville, Maryland.

9. Upon information and belief, Wade is a resident of North Carolina with a last known address in Maryland.

10. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Resensys asserts claims arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all claims arising under state law, because these claims are so related to claims over which the Court has original jurisdiction that they form part of the same case or controversy.

11. The Court has personal jurisdiction over Wade because Wade was employed by and performed work for Resensys in the District of Maryland and committed breaches of contract and acts of trade secret misappropriation in the District of Maryland.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Resensys's claim occurred in the District of Maryland.

## ALLEGATIONS COMMON TO ALL COUNTS

### Wade's Employment By and Abrupt Departure From Resensys

13. Resensys hired Wade as a Hardware Test Engineer in August 2021. Wade was promoted to Database Administrator in November 2024. Wade's promotion was formalized in the Employment Agreement. Under the Employment Agreement, Wade was responsible, *inter alia*, for "managing and ensuring continuity of [the] Resensys cloud"; "developing, managing, and ensuring continuity of [the] Renensys web portal and Resensys SenScope"; "developing . . . internal documentation that detail[s] the design . . . of the cloud, database, and web portal"; and "assisting as needed with [research and development] and other projects[.]" Employment Agreement ¶ 4 (The Employment Agreement is attached as Exhibit 1 to the Affidavit of Dr. Khandani, appended to the Motion for Preliminary Injunction filed contemporaneously herewith.)

14. Recognizing that Wade's work would expose him to Resensys's most sensitive software trade secrets, Resensys ensured that the Employment Agreement included robust

protections for the confidentiality of its Proprietary Information. *See* Employment Agreement ¶ 5 (defining "Proprietary Information."). Under Paragraph 5 of the Employment Agreement, Wade "agree[d], during and after the term of []his employment (i) not to disclose Proprietary Information . . . of [Resensys], to any person, firm, corporation, or entity and (ii) not to use such Proprietary Information except in connection with [Wade's] services for [Resensys]." Employment Agreement ¶ 5. Wade also agreed, "[u]pon termination of th[e] Agreement . . . promptly [to] deliver to [Resensys] all drawings, blueprints, software, process documentation, manuals, customer lists, employee lists, agent lists, letters, notes, notebooks, reports, models and prototypes, and any other materials containing Proprietary Information which are in [Wade's] possession or control." Employment Agreement ¶ 5.

15. Because Resensys intended to involve Wade in its research and development activities, Resensys also ensured that the Employment Agreement clearly established Resensys's ownership over any technology developed by Wade in the course of his work for Resensys. *See* Employment Agreement ¶ 6 (providing that "[a]ny technology made or conceived by [Wade] during the employment term and in conduct of [Wade's] services to [Resensys] becomes the property of [Resensys].").

16. The Employment Agreement also includes a non-competition provision. *See* Employment Agreement ¶ 7. Paragraph 7 provides in relevant part that, "for 12 calendar months after [Wade's] separation from employment with the Company . . . [Wade] shall not without the Company's prior written consent (i) participate in or be connected with, as an officer, employee, partner, agent, sole proprietor, owner, consultant, licensor, or otherwise, any business or other organization or activity in competition with the Company, or its subsidiaries, or (ii) solicit any of the Company's accounts or customers for another business or organization."

17. On or about March 25, 2026, Resensys became aware that Wade had stopped

performing his work duties. Wade did not provide any explanation to his Resensys supervisor or coworkers for the abrupt cessation of his work.

**Wade's Theft of Resensys's Trade Secrets and Attempts to Interfere With Resensys's Systems**

18. When Wade left Resensys, he took with him code and other technical information and documentation essential to the functioning of Resensys's SenScope software.

19. During his time at Resensys, Wade had prepared process documentation in a form that is known among software engineers as "code documentation": instructions and explanations that orient a software engineer to the structure and content of unfamiliar code. Paragraph 5 of the Employment Agreement obligated Wade to return "all . . . process documentation" upon termination of his employment. Employment Agreement ¶ 5. Wade did not do so and still refuses to do so.

20. While employed at Resensys, Wade also wrote, on Resensys's behalf and at Resensys's direction, a substantial body of code that formed an integral part of Resensys's SenScope software and web portal. Under Paragraph 6 of the Employment Agreement, this code is the property of Resensys. *See* Employment Agreement ¶ 6. And under Paragraph 5 of the Employment Agreement, Wade was obligated to return to Resensys this code and all other code owned by Resensys upon the termination of his employment. Wade has not done so and still refuses to do so.

21. It became clear soon after Wade's departure in late March 2026 that his theft of Resensys's code and code documentation was just one part of a broader scheme to disrupt Resensys's operations, alienate its customers, and set up a commercial operation of his own. On or about April 15, 2026, using an internet protocol ("IP") address associated with his residential address, Wade executed a DoS attack on Resensys's SenScope system that disabled the monitoring

system for 12 hours. At the same time, Wade also caused users attempting to use Resensys's customer service webpage to be redirected to a webpage controlled by Wade in his apartment.

22. Hoping to put its dealings with Wade firmly in the past, Resensys offered him a generous severance payment in exchange for the return of Resensys's code and code documentation, cooperation to remediate the damage done, and the cessation of his attempts to interfere with Resensys's servers and business. Wade purported to accept the offered exchange, and Resensys and Wade each executed on April 28, 2026 a Separation and Mutual Release Agreement ("Separation Agreement"). (The Separation Agreement is attached as Exhibit 2 to the Affidavit of Dr. Khandani, appended to the Motion for Preliminary Injunction filed contemporaneously herewith.)

23. In Paragraph 3 of the Separation Agreement, Wade "represent[ed] and warrant[ed] that all Company property, including but not limited to code, software, credentials, documentation, systems access, domains, and proprietary information, has been fully returned to the Company, and that no copies remain in Employee's possession, custody, or control." Separation Agreement ¶ 3.

24. In Paragraph 4 of the Separation Agreement, Wade "agree[d] . . . to provide limited cooperation for a period of one hundred and twenty (120) days following execution of th[e] Agreement to assist with transition of systems, documentation, and technical knowledge developed during employment." Separation Agreement ¶ 4.

25. In Paragraph 5 of the Separation Agreement, Wade "agree[d] not to interfere with, disrupt, or adversely affect the Company's systems, infrastructure, domains, DNS [domain name system] configurations, customers, or operations, whether directly or indirectly." Separation Agreement ¶ 5.

26. In Paragraph 6 of the Separation Agreement, Wade "acknowledge[d] continuing

obligations under the Employment Agreement, including confidentiality and protection of proprietary information." Separation Agreement f¶ 6.

27. Despite agreeing to the terms of the Separation Agreement, Wade did not return Resensys's intellectual property; refused to cooperate with Resensys as it attempted to manage the consequences of his abrupt departure and prior theft and disruptive conduct; and attempted to access Resensys's systems without authorization. DoS attacks on Resensys's servers using the username and password associated with Wade also continued.

28. On May 14, 2026, Resensys's President and Chief Technology Officer Mehdi Kalantari sent an email to Wade asking for help answering several questions about matters for which Wade had been responsible while employed by Resensys. By email on May 16, 2026, Wade stated that he had "started going through [the questions] carefully and [would] continue organizing [his] answers so that they are clear and useful." Wade did not provide any of the requested answers, however.

29. In his email of May 16, 2026, Wade also "ask[ed] whether there may be any reasonable open opportunity for [him] to be of help to the team again in some capacity." Dr. Kalantari replied that his "priority [was] to ensure we complete the current transition properly and fully document our systems in a clean and organized manner." However, Dr. Kalantari offered to "discuss possibilities" once Wade had "finish[ed] the current transition work."

30. Apparently upset by Dr. Kalantari's reluctance to rehire him immediately, Wade abandoned any attempt at cooperating with Resensys and resumed his efforts to interfere with Resensys's systems through DoS attacks and other unauthorized access attempts.

31. On May 31 and June 1, 2026, Wade gained unauthorized access to a Resensys production account identified as DID926 that hosts the software actually in use by end-users. Resensys confirmed that the unauthorized access was attributable to Wade because the requesting

IP address—73.200.205.44—was the same IP address Wade had used to access various Resensys accounts during his employment.

32. On June 5, 2026, Dr. Kalantari sent an email to Wade asking him to explain "the purpose of these logins and activities." Dr. Kalantari reminded Wade that "these accounts are associated with production systems"—that is, the same systems used by Resensys's customers.

33. Wade did not respond to Dr. Kalantari's email. Instead, he continued his attempts to disrupt Resensys's operations and steal its trade secrets.

34. On June 14, 2026, Wade, using his "tom" account used exclusively by him during his employment, gained unauthorized access to Resensys's code repositories and exported 19 separate sets of code.

35. Upon information and belief, on June 14, Wade also took control of Dr. Kalantari's own user credential, "mehkalan," and used that credential first to access Resensys's Amazon Web Services ("AWS") Systems Manager—a program allowing Resensys visibility into and control over its various servers—and then, using this unauthorized Systems Manager access, to connect to several of Resensys's servers.

36. While investigating Wade's attempted interference, Resensys discovered that Wade had made Resensys's proprietary information — which Resensys had always kept secured by individual credentials — publicly available on his personal website. This information included computer-assisted design models, design files, and technical drawings and renderings that Wade created during and within the scope of his employment by Resensys.

37. During its investigation, Resensys also discovered that Wade had published Resensys's source code and related proprietary materials to the Python Package Index—an online code repository—under the name "senstream." Some of these materials included passwords used to access Resensys's systems.

38. By letter of June 16, 2026 ("Demand Letter"), Resensys demanded that Wade cease and desist from attempts to access Resensys's systems without authorization; preserve all evidence relating to this unauthorized access; remove from public availability all proprietary information of Resensys that he had published or distributed; return to Resensys all code, information, and other materials owned by Resensys; and thereafter destroy all materials owned by Resensys in his possession, custody, or control. Resensys allowed Wade until June 18, 2026, to provide a notarized certification of compliance with these requests.

39. After receiving the Demand Letter, Wade requested a telephone conversation with Dr. Kalantari. During this conversation, Wade admitted that he had taken Resensys's code and stated that he was justified in doing so because the code belonged to him.

40. On June 18, 2026, Wade provided Dr. Kalantari with a signed Certification of Compliance in which he identified and pledged to return materials owned by Resensys, and affirmed that he would not attempt any further unauthorized access to Resensys systems. (The Certification of Compliance is attached as Exhibit 9 to the Affidavit of Dr. Khandani, appended to the Motion for Preliminary Injunction filed contemporaneously herewith.) Again, however, Wade's promises were empty. He did not return, and has not returned, the code and other intellectual property owned by Resensys in his possession. DoS attacks on Resensys's servers using Wade's username and password have continued.

41. In particular, between June and August 2026, Resensys sustained numerous DoS attacks on its database server, again using credentials associated with Wade. Over a sample period of 24 hours, the server received approximately 40,000 queries—an extraordinary rate of approximately *28 queries per minute*.

42. Resensys ran a test on August 23, 2026, that confirmed that the DoS attacks were perpetrated using Wade's login credentials. To achieve this confirmation, Resensys temporarily

restored Wade's login credentials, which had been previously disabled. About 550 successful login attempts over about 17 minutes followed. After gaining access, the user of these login credentials immediately queried specific database tables by name, evidencing that user's knowledge of Resensys's database structure.

43. This unauthorized access ceased once Resensys again disabled Wade's credentials. Wade nevertheless continued his DoS attacks. On August 27, 2026, Wade caused 20,614 connection requests to be sent to Resensys's server over a period of twelve hours. All of these connection requests originated from the IP address of a T-Mobile subscriber in North Carolina, Wade's state of residence. Resensys does not own or operate any machine in North Carolina.

44. On August 31, 2026, Resensys demanded in writing to Wade's counsel that Wade cease and desist from causing high volume traffic to Resensys's systems. Within 24 hours, the traffic from the T-Mobile IP address stopped.

45. Having sustained several months of these DoS attacks while attempting unsuccessfully to negotiate with Wade, Resensys now recognizes that Wade's only purpose in appearing to "negotiate" has been to continue his unlawful course of action with impunity, while at the same time setting up a competing business of his own.

46. Indeed, as recently as September 20, 2026, Wade identified himself on LinkedIn as the "Founding Engineer" at a "Stealth AI Startup," where he claims to be engaged in "[b]uilding software at the intersection of AI and the physical world—tools that help hardware and IoT [internet of things] companies make better use of their sensor data, technical knowledge, and support operations." Remarkably, Wade himself admits in this LinkedIn work description that "[t]he work draws on . . . several years building production IoT and data systems"—that is, that his work for the "Stealth AI Startup" depends on the trade secrets he misappropriated from Resensys.

**The Trade Secrets Misappropriated by Wade**

47. During his employment at Resensys, Wade had access to, and later misappropriated, at least seven different sets of code:

a. The code that is the basis of the latest version of Resensys's SenScope software;

b. The code by which Resensys consolidates multiple sensor signals into a single composite signal, a process known as a "multiplexer";

c. The code allowing for batch calibration of Resensys's tilt sensors;

d. Code enabling Resensys to deploy a rolling video system that detects impact or other disturbance;

e. All code stored in Resensys's Gitea servers;

f. Code enabling Resensys to calibrate multiple accelerometers simultaneously; and

g. Code enabling the measurement, from a desktop computer, of the energy consumed by a particular sensor, and the recording of this information in a database.

48. Wade had access to and misappropriated the three-dimensional design files for at least four different hardware components: Resensys's dual-axis tiltmeters; a mounting bracket for the tiltmeters; a mounting bracket for the solar panels used to provide power to Resensys's SenSpot sensor units; and an enclosure used to house Resensys's SenSpot sensor unit.

49. Wade had access to and misappropriated the design of Resensys's cloud system architecture.

50. Wade had access to and misappropriated credentials providing access to Resensys's entire database system, including all of Resensys's monitoring systems and information

concerning all of Resensys's customers and users.

**COUNT I**
**Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*)**

51. Resensys incorporates all preceding paragraphs as if fully set forth herein.

52. Resensys owns and possesses trade secrets used in and essential to its business. These trade secrets are identified in paragraphs 47–50 of this Verified Complaint.

53. These trade secrets give Resensys an advantage over competitors who do not know or use them. Resensys derives independent economic value from these trade secrets not being generally known to or readily ascertainable by others.

54. Resensys's trade secret and confidential information relates to products and services intended to be sold or used in interstate commerce. Resensys sells its products and services to customers nationally and in foreign nations.

55. Resensys has taken reasonable measures to protect the secrecy of its trade secrets, including by requiring employees such as Wade to sign employment agreements containing robust confidentiality protections.

56. Wade acquired the trade secrets owned by Resensys by improper means because he acquired them by theft and in breach of the Employment Agreement.

57. Wade has disclosed certain of Resensys's trade secrets to the general public by publishing them on his website and poses a serious threat of making further such disclosures. Wade has prevented Resensys from possessing or using its trade secrets. Wade has attempted and will continue to attempt to use Resensys's trade secrets for his personal commercial gain.

58. Wade's actions as described herein constitute a misappropriation of Resensys's trade secrets under 18 U.S.C. § 1836.

59. Wade's use and threatened use of Resensys's trade secrets has caused, and will

continue to cause, irreparable injury to Resensys. Resensys is entitled to temporary, preliminary, and permanent injunctive relief prohibiting Wade from misappropriating (or enabling others to access or use) the trade secrets, and requiring that Wade return to Resensys all materials constituting, reflecting or embodying such trade secrets. Resensys has no adequate remedy at law because Resensys's damages cannot be ascertained and, absent injunctive relief, Wade will continue to harm Resensys's existing and prospective business, both in the United States and internationally.

60. Wade's actions were and are willful and malicious, thus justifying exemplary damages and attorney's fees under 18 U.S.C. § 1836(b)(3)(C).

**COUNT II**
**Violation of the Maryland Uniform Trade Secrets Act (Md. Code, Com. Law § 11-1201 *et seq.*)**

61. Resensys incorporates all preceding paragraphs as if fully set forth herein.

62. Resensys owns and possesses trade secrets used in and essential to its business. These trade secrets are identified in paragraphs 47–50 of this Verified Complaint.

63. These trade secrets give Resensys an advantage over competitors who do not know or use them. Resensys derives independent economic value from these trade secrets not being generally known to or readily ascertainable by others.

64. Resensys has taken reasonable measures to protect the secrecy of its trade secrets, including by requiring employees such as Wade to sign employment agreements containing robust confidentiality protections.

65. Wade acquired the trade secrets owned by Resensys by improper means because he acquired them by theft and in breach of the Employment Agreement.

66. Wade has disclosed certain of Resensys's trade secrets to the general public by publishing them on his website and poses a serious threat of making further such disclosures.

Wade has prevented Resensys from possessing or using its trade secrets. Wade has attempted and will continue to attempt to use Resensys's trade secrets for his personal commercial gain.

67. Wade's actions as described herein constitute a misappropriation of trade secrets in violation of the Maryland Uniform Trade Secrets Act, Md. Code, Com. Law § 11-1201 *et seq*.

68. Wade's use and threatened use of Resensys's trade secrets has caused, and will continue to cause, irreparable injury to Resensys. Resensys is entitled to temporary, preliminary, and permanent injunctive relief prohibiting Wade from misappropriating (or enabling others to access or use) the trade secrets, and requiring that Wade return to Resensys all materials constituting, reflecting or embodying such trade secrets. Resensys has no adequate remedy at law because Resensys's damages cannot be ascertained and, absent injunctive relief, Wade will continue to harm Resensys's existing and prospective business, both in the United States and internationally.

69. Resensys is entitled to attorney's fees because Wade's misappropriation was and is willful and malicious.

## COUNT III
## Breach of Contract

70. Resensys incorporates all preceding paragraphs as if fully set forth herein.

71. Resensys and Wade are parties to the Employment Agreement.

72. Under Paragraph 5 of the Employment Agreement, Wade "agree[d], during and after the term of []his employment (i) not to disclose Proprietary Information . . . of [Resensys], to any person, firm, corporation, or entity and (ii) not to use such Proprietary Information except in connection with [Wade's] services for [Resensys]." Employment Agreement ¶ 5.

73. Wade also agreed, "[u]pon termination of th[e] Agreement . . . promptly [to] deliver to [Resensys] all drawings, blueprints, software, process documentation, manuals, customer lists,

employee lists, agent lists, letters, notes, notebooks, reports, models and prototypes, and any other materials containing Proprietary Information which are in [Wade's] possession or control." Employment Agreement ¶ 5.

74. The Employment Agreement established Resensys's ownership of any technology developed by Wade in the course of his work for Resensys. *See* Employment Agreement ¶ 6 (providing that "[a]ny technology made or conceived by [Wade] during the employment term and in conduct of [Wade's] services to [Resensys] becomes the property of [Resensys].").

75. The Employment Agreement provides, in addition, that "for 12 calendar months after [Wade's] separation from employment with the Company . . . [Wade] shall not without the Company's prior written consent (i) participate in or be connected with, as an officer, employee, partner, agent, sole proprietor, owner, consultant, licensor, or otherwise, any business or other organization or activity in competition with the Company, or its subsidiaries, or (ii) solicit any of the Company's accounts or customers for another business or organization." Employment Agreement ¶ 7.

76. Resensys and Wade are parties to the Separation Agreement.

77. In Paragraph 3 of the Separation Agreement, Wade "represent[ed] and warrant[ed] that all Company property, including but not limited to code, software, credentials, documentation, systems access, domains, and proprietary information, has been fully returned to the Company, and that no copies remain in Employee's possession, custody, or control." Separation Agreement ¶ 3.

78. In Paragraph 4 of the Separation Agreement, Wade "agree[d] . . . to provide limited cooperation for a period of one hundred and twenty (120) days following execution of th[e] Agreement to assist with transition of systems, documentation, and technical knowledge developed during employment." Separation Agreement ¶ 4.

79. In Paragraph 5 of the Separation Agreement, Wade "agree[d] not to interfere with, disrupt, or adversely affect the Company's systems, infrastructure, domains, DNS [domain name system] configurations, customers, or operations, whether directly or indirectly." Separation Agreement ¶ 5.

80. In Paragraph 6 of the Separation Agreement, Wade "acknowledge[d] continuing obligations under the Employment Agreement, including confidentiality and protection of proprietary information." Separation Agreement ¶ 6.

81. Wade has breached and continues to breach his obligations under the Employment Agreement and Separation Agreement.

82. Wade has breached his obligations under Paragraph 5 of the Employment Agreement by disclosing Resensys's trade secrets on his personal website and using Resensys's trade secrets for purposes unconnected to his work at Resensys.

83. Wade has also breached his obligations under Paragraph 5 of the Employment Agreement by failing to return to Resensys the trade secrets owned by Resensys that are or were in Wade's possession or control.

84. Wade has breached his obligations under Paragraph 6 of the Employment Agreement by accessing, using, and publishing technology that was the property of Resensys.

85. Upon information and belief, Wade breached Paragraph 7 of the Employment Agreement by attempting to participate in business in competition with Resensys.

86. Wade breached his obligations under Paragraph 3 of the Separation Agreement because he has refused to return Resensys's property as set forth herein and in Paragraph 3 of the Separation Agreement.

87. Wade has breached his obligations under Paragraph 4 of the Separation Agreement because he has refused to provide the post-termination assistance required by that Paragraph.

88. Wade has breached his obligations under Paragraph 5 of the Separation Agreement because he has continued to seek unauthorized access to Resensys's systems and has attempted to disrupt Resensys's operations by DoS attacks and other means.

89. Wade has breached his obligations under Paragraph 6 of the Separation Agreement by publishing Resensys's confidential and proprietary information as set forth herein.

90. Wade has also breached his obligations under the Certification of Compliance by failing to return to Resensys's property and additional attempts to disrupt Resensys's operations as set forth herein.

91. Wade's unauthorized possession, use, and disclosure of Resensys's trade secrets in violation of the Employment Agreement, Separation Agreement, and Certification of Compliance have caused and continue to cause Resensys to sustain significant damages. In particular, Wade's breaches have disrupted Resensys's operations, damaged customer goodwill, and diminished the value of Resensys's trade secrets.

**COUNT IV**
**Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030(g))**

92. Resensys incorporates all preceding paragraphs as if fully set forth herein.

93. It is a violation of the Computer Fraud and Abuse Act ("CFAA") to "intentionally access[] a computer[1] without authorization or exceed[] authorized access, and thereby obtain . . . information from any protected computer,[2]" 18 U.S.C § 1030(a)(2)(C), or "intentionally access[]

[1] "[T]he term 'computer' means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device." 18 U.S.C § 1030(e)(1).

[2] "[T]the term 'protected computer' means a computer . . . (B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication

a protected computer without authorization, and as a result of such conduct, cause[] damage and loss," 18 U.S.C. § 1030(a)(5)(C).

94. Wade violated these and other provisions of the CFAA by gaining unauthorized access, on or around May 31 and June 1, 2026, to a Resensys production account identified as DID926, which is a computer and a protected computer under the CFFA, and which hosts the software actually in use by end-users. This unauthorized access disrupted Resensys's operations and damaged customer goodwill.

95. Wade also violated these and other provisions of the CFAA on or around June 14, 2026, by gaining unauthorized access to Resensys's code repositories, which are computers and protected computers under the CFFA, and exporting 19 separate sets of code. This unauthorized access and misappropriation caused Resensys loss and damage by diminishing the value of its trade secrets, disrupting its operations, and damaging customer goodwill.

96. It is a violation of the CFAA to "knowingly and with intent to defraud traffic[] . . . in any password or similar information through which a computer may be accessed without authorization, if . . . such trafficking affects interstate or foreign commerce[.]" 18 U.S.C. § 1030(a)(6). Wade violated this provision of the CFAA by publishing credentials allowing access to Resensys's systems to a publicly-available website.

97. It is a violation of the CFAA to "knowingly cause[] the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause[] damage without authorization, to a protected computer[.]" 18 U.S.C. § 1030(a)(5)(A). It is also a violation of the CFAA to "intentionally access[] a protected computer without authorization, and as a result of such conduct, cause[] damage and loss." *Id.* at (5)(C). Wade violated these provisions of the

of the United States; or (C) that . . . (ii) . . . (II) has moved in or otherwise affects interstate or foreign commerce." 18 U.S.C. § 1030(e)(2).

CFAA by launching repeated DoS attacks against Resensys's servers.

98. Resensys is entitled to "maintain a civil action against [Wade] to obtain compensatory damages and injunctive relief or other equitable relief," 18 U.S.C. § 1030(g), because Wade's actions have caused "loss to 1 or more persons during a[] 1-year period . . . aggregating at least $5,000 in value," 18 U.S.C. § 1030(g).

99. Resensys incurred more than $5,000 in investigation, remediation, and repair costs since Wade's termination of employment.

100. Wade's CFAA violations cause threats to public safety.

## COUNT V
## Unfair Competition

101. Resensys incorporates all preceding paragraphs as if fully set forth herein.

102. The Resensys intellectual property stolen by Wade, to the extent any such data does not necessarily constitute a trade secret under the DTSA or MUTSA, nevertheless is protected from misappropriation.

103. Wade damaged or jeoparded Resensys's business by fraud, deceit, trickery and unfair methods.

104. Wade has damaged Resensys's business by misappropriating Resensys's confidential information and disrupting its computer systems and operations. Wade has caused this damage willfully, maliciously, and with the intent to injure Resensys's business.

105. Resensys is entitled to compensatory and punitive damages resulting from Wade's misappropriation of Resensys's confidential information and his malicious disruption of Resensys's computer systems and operations.

## PRAYER

WHEREFORE, Resensys respectfully requests:

1. Specific performance of the promises made by Wade in the Employment Agreement and Separation Agreement;

2. That Wade be temporarily, preliminarily, and permanently enjoined and restrained from using or disclosing to any person any trade secrets and/or confidential information owned by Resensys;

3. That Wade be temporarily, preliminarily, and permanently enjoined and restrained from interfering or disrupting, or attempting to interfere or disrupt, Resensys's computer systems or operations;

4. That Wade be compelled to return to Resensys all of Resensys's property, including Resensys's trade secrets, know-how, and other confidential information;

5. That Resensys be awarded past and future damages, which exceed $75,000, for the harm caused by Wade's wrongful acts, plus pre- and post-judgment interest;

6. That Resensys be awarded exemplary damages under 18 U.S.C. § 1836(b)(3)(C);

7. That Resensys be awarded its attorney's fees and costs; and

8. That Resensys be awarded all other relief as may be just and proper.

Dated: October 14, 2026

Respectfully submitted,

*/s/ Justin A. Redd*

Justin A. Redd (Fed. Bar No. 18614)
Bradley M. Strickland (Fed. Bar No. 21055)
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, Maryland 21202
Telephone: 410-752-6030
Facsimile: 410-361-8219
jredd@kg-law.com
bstrickland@kg-law.com

*Counsel for Resensys, LLC*

**JURY DEMAND**

Plaintiff demands trial by jury for all issues triable by a jury.

*/s/ Justin A. Redd*
Justin A. Redd (Fed. Bar No. 18614)

## VERIFICATION

I solemnly affirm under the penalties of perjury that the factual allegations in the foregoing Complaint are true to the best of my knowledge, information and belief.

Mehdi K. Khandani
President and Chief Technology Officer
Resensys, LLC

October 12, 2026
DATE